**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 24-10702 |
| | § | |
| FCA CONSTRUCTION LLC, | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | SECTION A |
| | § | |
| _____ | § | |
| FCA CONSTRUCTION LLC, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADV. NO. 24-1007 |
| | § | |
| SOUTHSTAR FINANCIAL, LLC, | § | |
| | § | |
| DEFENDANT. | § | |
| | § | |

**MEMORANDUM OPINION**

The first two counts in the *Amended Complaint* filed by FCA Construction, LLC, ("FCA"), in the above-captioned adversary proceeding seek (i) a declaratory judgment that $226,717.39 held by Southstar in escrow is property of FCA's bankruptcy estate (Count 1) and (ii) turnover of those escrowed funds to FCA as a debtor-in-possession pursuant to 11 U.S.C. § 542 (Count 2) (together, the "Turnover Claims"). [ECF Doc. 21]. The *Amended Complaint* includes four additional causes of action against Southstar: (i) avoidance of fraudulent transfers under 11 U.S.C. § 548 (Count 3); (ii) avoidance of preference payments under 11 U.S.C. § 547 (Count 4); (iii) recovery of avoided transfers under 11 U.S.C. § 550 (Count 5); and (iv) disallowance of all Southstar's claims under 11 U.S.C. § 502 (Count 6). *Id.*

Before the Court is the *Motion For Partial Summary Judgment* (the "Motion"), [ECF Doc. 33], and the statement of uncontested facts in support of the Motion, [ECF Doc. 34], filed by FCA.

The Motion seeks partial summary judgment on the Turnover Claims.  Southstar filed an opposition to the Motion and a statement of uncontested facts in support of its opposition.  [ECF Doc. 44].  FCA filed a reply in support of the Motion.  [ECF Doc. 48].

For the following reasons, the Court **DENIES** the Motion.

### JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334.  The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(B).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### DISCUSSION

The parties agree upon or do not dispute the following facts:

1.      On December 12, 2022, FCA and certain of its affiliates (the "FCA Affiliates")[1] executed three agreements with Southstar, including a Non-Recourse Factoring and Security Agreement (the "Factoring Agreement").  [ECF Doc. 34, ¶ 1; ECF Doc. 44-1, ¶ 1].

2.      The Factoring Agreement granted Southstar a standing option to purchase certain of FCA's and FCA Affiliates' accounts receivables at a discount.  [ECF Doc. 34, ¶ 1; ECF Doc. 44-1, ¶ 1].

3.      Prior to executing the Factoring Agreement, FCA obtained an Economic Injury Disaster Loan from the Small Business Administration (the "SBA") and an SBA 7(a) loan through Newtek Small Business Finance, LLC ("Newtek").  [ECF Doc. 34, ¶¶ 2, 4; ECF Doc. 44-1, ¶¶ 2, 4].

---

[1]      The FCA Affiliates include CFM Disaster Recovery Services, LLC; FCA Construction, LLC; FCA Electrical Services, LLC; FCA Equipment, LLC; FCA Mechanical, LLC; FCA Plumbing, LLC; and FCA Roofing, LLC.

4.      SBA and Newtek perfected a first priority and second priority lien on all of FCA's assets, respectively.  [ECF Doc. 34, ¶¶ 3, 5–11; ECF Doc. 44-1, ¶¶ 3, 5–11].

5.      Southstar purchased its last account receivable from FCA on July 28, 2023.  [ECF Doc. 34, ¶ 12; ECF Doc. 44-1, ¶ 12].

6.      On August 31, 2023, Southstar sent FCA a Final "Notice of Breach" (the "Termination Notice"), which (i) provided that "[d]ue to the severity of [FCA's alleged] defaults, this is Southstar's final notice of breach and notice that Southstar has no intention of continuing to fund under our Factoring & Security Agreement" and (ii) demanded full payment of all obligations including the total factor due amount of $514,592.97, plus any outstanding or pending legal fees.  [ECF Doc. 34, ¶ 15; ECF Doc. 44-1, ¶ 15].

7.      Between September and November 2023, FCA requested that Southstar apply funds it held in escrow to the "factor due" balance listed on Southstar's online factoring portal (the "Portal").  [ECF Doc. 34, ¶ 16; ECF Doc. 44-1, ¶ 16].

8.      As of September 25, 2023, the Portal reflected a "factor due" balance of $209,992.81 and indicated that Southstar held $132,215.65 in a reserve escrow account.  [ECF Doc. 34, ¶¶ 17–18; ECF Doc. 44-1, ¶¶ 17–18].

9.       As of November 16, 2023, the Portal reflected a "factor due" balance of $231,887.59 and indicated that Southstar held $105,870.00 in an "unfactored receipts" account in addition to the $132,215.65 it still held in a reserve escrow account.  [ECF Doc. 34, ¶¶ 19–20; ECF Doc. 44-1, ¶¶ 19–20].

10.     Southstar did not apply any of the funds it held in the reserve escrow account or unfactored receipts account to the "factor due" balance until January 2024.  [ECF Doc. 34, ¶ 22; ECF Doc. 44-1, ¶ 22].

11.     On January 31, 2024, Southstar transferred $296,894.65 from the unfactored receipts account to the reserve escrow account and then deducted two "chargebacks" from the reserve escrow account in the amounts of $231,035.58 and $46,784.35  [ECF Doc. 34, ¶¶ 23–24; ECF Doc. 44-1, ¶ 23–24].

12.     After the chargebacks, the Portal reflected a "factor due" balance of $0.00.   [ECF Doc. 34, ¶ 26; ECF Doc. 44-1, ¶ 26].

13.     On February 6, 2024, Southstar deducted $50,466.75 from the reserve escrow account for attorney's fees for Southstar's outside counsel involved in the litigation with FCA. [ECF Doc. 34, ¶ 25; ECF Doc. 44-1, ¶ 25].

14.     After accounting for the January and February deductions, Southstar maintained $226,717.39 between the reserve escrow and unfactored receipts accounts (the "Escrowed Funds").  [ECF Doc. 34, ¶ 27; ECF Doc. 44-1, ¶ 27].

15.     On April 11, 2024, FCA filed its petition for bankruptcy relief under chapter 11 of the Bankruptcy Code.  [Case No. 24-10702, ECF Doc. 1].

16.     Along with several other "first-day motions," FCA filed an *Emergency Motion For Turnover of Property of the Estate* (the "Turnover Motion"), [No. 24-10702, ECF Doc. 9].

17.     On April 23, 2024, FCA filed the above-captioned adversary proceeding against Southstar seeking the same relief as in the Turnover Motion (the "Adversary Proceeding").[2]  [ECF Doc. 1].

18.     After a hearing on an emergency motion for a preliminary injunction, this Court consolidated the Turnover Motion within the Adversary Proceeding.  [ECF Doc. 16].

---

[2]     FCA filed the Adversary Proceeding because the relief it requested in the Turnover Motion could only be obtained through the filing of an adversary proceeding.  *See* FED. R. BANKR. P. 7001(1).

19.     FCA now seeks partial summary judgment on the first two counts contained in the Amended Complaint, the Turnover Claims.  [ECF Doc. 33].

## ANALYSIS

FCA alleges that the Escrowed Funds are property of the estate under 11 U.S.C. § 541 based on two separate theories under state law.[3]  First, FCA contends that the Factoring Agreement was either terminated pursuant to the Termination Notice that Southstar sent to FCA on August 31, 2023, or Southstar's liens on FCA's accounts receivable were extinguished since FCA's "factor due" balance in the Portal is $0.00.  Under either scenario, Southstar can no longer assert any security interest in the Escrowed Funds.  Alternatively, assuming that the Factoring Agreement was not terminated or extinguished, FCA contends that the Escrowed Funds consist of payments on unfactored accounts receivable.  FCA retained ownership rights to the unfactored accounts receivable, and to the degree Southstar could collect on them, it could only do so as a junior lienholder.  Thus, FCA requests turnover of the Escrowed Funds as a debtor-in-possession pursuant to 11 U.S.C. § 542.

### A.     Summary Judgment Standard

A court grants summary judgment when the pleadings, discovery responses, and affidavits show no genuine dispute as to any material fact and the evidence entitles the movant to judgment at trial.  FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  No genuine dispute exists when "a rational trier of fact could not find for the [nonmovant] based upon the record evidence before the court." *James by James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  A court views the facts and evidence in the light most favorable to the

---

[3]     The Court notes that there is not a material distinction between the relevant South Carolina and Louisiana state law, but it does not address the choice of law issue.

nonmovant. *See Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). If the movant fails

to show an absence of a genuine issue of material fact, a court shall deny the movant's motion.

*See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the

nonmovant must go beyond the pleadings and designate facts that show a genuine issue. *See* FED.

R. CIV. P. 56(c)(1).

      **B.**      **A Genuine Issue of Material Fact Exists as to When the Factoring Agreement Terminated.**

First, FCA contends that the Termination Notice that Southstar sent to FCA terminated the

Factoring Agreement. Notice of termination must be clear, unambiguous, and in accordance with

the terms of the contract. *See Edisto Island Hist. Soc'y, Inc. v. Gregory*, 580 S.E.2d 141, 143 (S.C.

2003); *Cooper v. Conagra, Inc.*, 340 So. 2d 661, 663 (La. Ct. App. 1976).

In support of its contention, FCA provides the Termination Notice itself, [ECF Doc. 33-

10], as well as the declaration of Albert W. Courcelle, III, the CEO and sole member of FCA, who

concluded that the Termination Notice amounted to a termination of the Factoring Agreement,

[ECF Doc. 33-1, ¶ 10]. According to FCA, the Termination Notice indicated Southstar's intent to

no longer purchase accounts receivable under the Factoring Agreement which, at the very least,

amounted to an anticipatory breach.

In response, Southstar argues that the Termination Notice was titled a "Notice of Breach"

and did not contain any language regarding the termination of the Factoring Agreement. Southstar

attached an affidavit from Scott B. Norris, the Vice President and head Portfolio Manager at

Southstar, who attests that Southstar had sent similar notices of breach to FCA on April 20, 2023,

and May 11, 2023. [ECF Doc. 44-2, ¶¶ 13–17]. Neither of the previous notices amounted to a

termination of the Factoring Agreement. Mr. Norris further attests that had Southstar intended to

terminate the Factoring Agreement when it sent the Termination Notice, Southstar would have included early termination fees in the calculated payoff. [ECF Doc. 44-2, ¶ 17].

FCA has failed to meet its burden of demonstrating that a genuine issue of material fact exists regarding when the Factoring Agreement was terminated.

**C.      A Genuine Issue of Material Fact Exists as to Whether the "Factor Due" Balance Listed on the Portal Reflects the Full Balance FCA Owes Under the Factoring Agreement.**

Second, FCA contends that it satisfied its obligation owed to Southstar under the Factoring Agreement thereby extinguishing Southstar's security interest on FCA's accounts receivable because, as of the petition date, FCA's "factor due" balance owed to Southstar is $0.00. A security interest is defined as an interest in personal property or fixtures "which secures payment or performance of an obligation." S.C. CODE ANN. § 36-1-201; LA. REV. STAT. ANN. § 10:1-201. Thus, "[a] security interest . . . has no validity absent its underlying obligation; the satisfaction of that obligation extinguishes the security interest." *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.*, 570 F.2d 1220, 1225 (5th Cir. 1978); *see also Rozen v. N.C Nat'l Bank*, 588 F.2d 83, 86 (4th Cir. 1978) ("A secured creditor's interest in collateral ceases when the debt is paid in full . . . .").

In support of its contention, FCA attaches (i) several screenshots of the "factor due" balance listed in the Portal after Southstar sent the Termination Notice and (ii) several emails wherein FCA requests that Southstar apply escrowed funds to the "factor due" balance. [ECF Doc. 33-10–18]. FCA has presented no evidence regarding how the Portal is structured or how the parties intended to use the Portal.

In response, Southstar argues that the "factor due" balance listed in the Portal is not a complete representation of the balance owed to Southstar because it only accounts for the amounts owed for factored accounts receivable and does not account for other fees that Southstar is owed

7

under the Factoring Agreement. Specifically, Mr. Norris attests that the "factor due" balance does not account for "reserve amounts, legal and indemnification obligations owing and continuing to accrue, mandatory monthly minimums, []default fees, and other obligations set forth in the Factoring Agreement." [ECF Doc. 44-2, ¶ 19]. Mr. Norris also attests that early termination fees were not included in the "factor due" balance listed in the Portal. [ECF Doc. 44-2, ¶ 17]. The Termination Notice itself also provides that there may be "outstanding and pending legal fees" in addition to the remaining "factor due" balance. [ECF Doc. 33-10].

FCA has failed to meet its burden of demonstrating that a genuine issue of material fact exists regarding whether the "factor due" balance listed in the Portal is the full balance FCA owes under the Factoring Agreement.

**D.      A Genuine Issue of Material Fact Exists as to Whether the Accounts Southstar Collected on After the Notice Were Factored or Unfactored Accounts Receivable.**

Third, FCA contends that the Escrowed Funds were collected from unfactored accounts receivable which Southstar was not authorized to collect under the Factoring Agreement. FCA further contends that to the degree Southstar could collect unfactored accounts receivable, it could only do so as a junior lienholder.

FCA argues that the Portal and corresponding escrow report indicated that Southstar collected $125,893.77 on March 5, 2024, from an unfactored account receivable for St. John the Baptist Church, which Southstar then held in an "unfactored receipts" account. [ECF Doc. 33, ¶¶ 44, 46]. Mr. Courcelle further attests that Southstar maintained a balance in the "unfactored receipts" account which fluctuated until the petition date. [ECF Doc. 33-1, ¶¶ 11–13]. But FCA presents no evidence detailing which other accounts receivable that Southstar collected were unfactored.

In response, Southstar disputes the extent to which it collected from unfactored accounts receivable.  Indeed, the Termination Notice that Southstar sent to FCA referenced the St. John the Baptist Church account as an account receivable that Southstar purchased.  [ECF Doc. 44-2, ¶ 16; ECF Doc. 33-10].   Mr. Norris attests that Southstar elected to exercise all its rights under the Factoring Agreement once FCA filed a lawsuit against them.  [ECF Doc. 44-2, ¶ 18].  In such an event, it is Southstar's customary and typical response to preserve all its rights to collateral which includes unfactored accounts receivable.  *Id.*

FCA has failed to meet its burden of demonstrating that a genuine issue of material fact exists regarding whether and to what extent Southstar collected from unfactored accounts receivable.

## CONCLUSION

Because the Court finds that genuine issues of material fact exists, the resolution of the Turnover Claims is better suited for resolution at a trial on the merits.  Accordingly,

**IT IS ORDERED** that the Motion is **DENIED**.

New Orleans, Louisiana, January 6, 2025.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE